SHIELDS, J.
In this proceeding it is sought to reverse the judgment of the court of common pleas because of certain alleged errors occuring upon the trial of said action in said court, as appears in a petition in error filed in this court for such reversal.
In said action a recovery in damages was sought by the plaintiff in error as plaintiff against the defendant in error as defendant for the death of Martha B. Taylor on May 25, 1915, caused by the alleged negligence of the defendant in error, the facts and circumstances of which are referred to in this opinion.
The defendant by answer admitted that the said decedent was struck by one of its cars and instantly killed at the time and place mentioned, but it denied the negligence charged and averred contributory negligence, which was denied by the plaintiff in his reply.
A verdict and judgment were recovered by the defendant company below.
While the petition in error alleges some thirteen separate grounds of error, three grounds only were argued to this court, namely:
1. The refusal of the court below to charge the jury^ before argument as requested by the plaintiff below.
2. Error in said court’s charge to the jury.
3. That the verdict was manifestly against the weight of the evidence.
It appears that the decedent who before and up to the day of her death, resided in Newark, Ohio, had left her home on said day to visit at the home of one John Fullerton, near Hebron, in said county, where a friend of hers had just died, and where other friends of the deceased friend were also gathered. The Fullerton home was located near the defendant company’s line of road, perhaps some thirty or forty feet from its tracks, where there was a signal stop known as “The Oak Stop,” and where persons at the Fullerton home boarding the defendant company’s cars, going north, were obliged to cross the two tracks of said company at a distance of some fifty feet from said home. The customary signal to the passing cars to stop for passengers awaiting passage was given by the waving or throwing up of the hands or other like means. On the day in question it appears *555 that the decedent desired to return to her home in the early evening of said day and being informed that a car was approaching, which could be seen at a considerable distance on a straight track from the Fullerton home, she hurriedly arose from the table where she was eating and signaling the car with her hands, and perhaps a handkerchief, with an accompanying friend while in the yard of the Fullerton home, she hastened to cross the defendant company’s tracks in plain sight of and within a short distance of a rapidly approaching ear to reach the opposite side to board the same, and in the attempt to do so she was struck and killed by one of the defendant’s cars, which was then running at the rate of thirty-five to forty miles per hour. As in other like cases, so the eye witnesses to the tragic end of the decedent in this case differ in some of the particulars of the accident, some testifying that the decedent was warned against the danger of crossing the tracks at that time in the face of the fast approaching car, which could readily be seen before she attempted to cross, and that she was running across the tracks when struck, when the car was about two hundred feet distant from her, while others testify to a different state of facts. Upon an examination of the testimony given upon the trial oii this branch of the case, if we were sitting as a jury to judge of the effect of this testimony, we would feel compelled to find that death resulted from a mistaken judgment based upon a miscalculation of the speed of the ear, a conclusion reached by the jury, perhaps, as evidenced by their verdict. In this connection it might be remarked that it is a matter of common knowledge, emphasized by the daily record of accidents happening upon railroads and from the operation of automobiles upon the public highways, that many such accidents are due to a misconception of the extent of space traveled by such vehicles in an incredibly short period of time, and as a result accidents follow. Here it is admitted that the car in question was traveling at the rate of from thirty-five to forty miles per hour, hence it is apparent that a person about to cross the tracks of said company to take passage on the car from the opposite side would be required to so cross at a considerable distance in advance of such approaching car, to cross safely and to avoid accident. But contributory negligence, when the evidence is conflicting, is a question of fact for the jury, and leaving this feature *556 of the case, counsel for plaintiff in error argued that although the decedent may have been primarily negligent, the petition presents a case on which the plaintiff in error claims he was entitled to have certain propositions of law submitted to the jury before argument which the court refused to give. Here the issue of what is known as the “last chance” is claimed to be raised by the averments in plaintiff’s third amended petition and, as claimed, was supported by the evidence, and it is urged that the court below erred in refusing to give to the jury in charge several requests containing certain propositions of law submitted on behalf of the plaintiff in error before argument in relation to such issue. In Drown v. Northern Ohio Trac. Co., 76 Ohio St. 234, 248 [81 N. E. 326; 10 L. R. A. (N. S.) 421; 118 Am. St. 844], the judge announcing the opinion in that case, among other things, says:
“It is clear, then, that the ‘last chance’ rule should not be given as a hit or miss rule in every case including negligence. It should be given with discrimination. ’ ’
The doctrine of “last chance” in the evolution of modern jurisprudence as defined by modern text writers and interpreted by courts seems to extend the long recognized rule as to the effect of combined contributory and concurrent negligence, and affords a right of action in damages to the injured person, although primarily negligent, if the defendant after discovering, or by the exercise of ordinary care could have discovered, the danger of such person and fails to use such care to avoid injuring such person. This view contemplates that the act of negligence of the injured party was not heedless or wilful, for certain it is that the law does not place a premium upon one’s own wanton or rash act and cast upon another the responsibility of such act, but while such negligence creates the condition of danger, the law permits a recovery in damages for the subsequent negligence of a defendant causing such injury after becoming aware, or in the exercise of ordinary care could have become aware, of such danger.
Of the eight requests submitted on behalf of the plaintiff in error to be given in charge to the jury before argument, Nos. 4, 5, 7 and 8 were so given and Nos. 1, 2, 3 and 6 were refused.
*557 Request No. 1 was as follows:
“The court charges you that the plaintiff can recover in this case, notwithstanding the decedent may have been guilty of negligence in crossing in front of the moving car if the motorman after he became aware, or ought to have become aware of her position, failed to use ordinary care to avoid injuring her. ’ ’
In their brief, counsel for plaintiff in error cite as authority for such instruction:
Cincinnati, H. & D. Ry. v. Kassen, 49 Ohio St. 230 [31 N. E. 282; 16 L. R. A. 674]; Erie Ry. v. McCormick, 69 Ohio St. 45 [68 N. E. 571]; Drown v. Northern Ohio Trac. Co., 76 Ohio St. 234 [81 N. E. 326; 10 L. R. A. (N. S.) 421; 118 Am. St. 844]; Steubenville & W. Trac. Co. v. Brandon, 87 Ohio St. 187 [100 N. E. 325]; West v. Gillette, 95 Ohio St. 305 [116 N. E. 521],
In Cincinnati, H. & D. Ry. v. Kassen, cited, the court in that case announced the rule that:
“It is a well settled rule of law of negligence, that the plaintiff may recover, notwithstanding his own negligence exposed him to the risk of the inquiry of which he complains, if the defendant, after he became aware, or-ought to have become aware, of the plaintiff’s danger, failed to use ordinary care to avoid injuring him, and he was thereby injured.’’
In the case of Erie Ry. v. McCormick, cited, the court laid down the following rule :
“In an action against a railroad company by one who, by his own fault is upon its track and in a place of danger, to recover for a personal injury caused by the failure of its employes operating one of its trains to exercise due care after knowledge of his peril, it is necessary to show actual knowledge imputable to the company.’’ Cincinnati, H. & D. Ry. v. Kassen, supra, distinguished.
In Drown v. Northern Ohio Trac. Co. cited, it was held that:
“The doctrine of ‘last chance’ as formulated in Railroad Co. v. Kassen, 49 Ohio St. 230, paragraph one of syllabus, does not apply where the plaintiff has been negligent, and his negligence continues, and, concurrently with the negligence of defendant, directly contributes to produce the injury; it applies only where there is negligence of the defendant subsequent to, and not contemporaneous with, negligence by the plaintiff so that the negli *558 gence of defendant is clearly the proximate cause of the injury and that of the plaintiff the remote cause.”
In Steubenville & W. Trac. Co. v. Brandon, cited, the third paragraph of syllabus reads as follows:
“Where the motorman of a street car being operated on a public street in a much frequented part of a city, discovers, or by the exercise of ordinary care and watchfulness should discover, that the driver of a smaller vehicle is about to cross the track at a street crossing, in front of such car, it is the motorman’s duty to use ordinary vigilance to stop or check the car in order to avoid collision; and the fact that such driver may have omitted to look for the approach of the car will not, as matter of law, defeat his right to recover for injury from a collision with such car if the motorman has not used such vigilance. ’ ’
In West v. Gillette, the court held that:
“Where a collision occurs and such driver is injured and the undisputed evidence shows that the motorman actually saw such vehicle and had it continually in view for a considerable distance from the crossing, it is for the jury to determine whether he exercised such vigilance and care in the circumstances; and the fact that the driver may have been originally negligent in the manner of going on the crossing will not, as matter of law, defeat his right to recover for the injury, if the motorman has not used such vigilance after discovering him. ’ ’
Of course the rule of law announced in each of the foregoing cases was intended to apply to the particular facts in such cases. While the last three cases were crossing cases, the facts in each ease were essentially different. Without taking time to discuss the history of these cases or the principles of law laid down therein, we are not persuaded that the Supreme Court of this state has as yet announced the doctrine contended for by the plaintiff in error and as embraced in said request No. 1. As we read them, the last three cases cited do not bear out the construction contended for, certainly not in the last case, for there the motorman in charge of the car actually saw the horse and buggy several hundred feet before the impact at the crossing, which fact eliminated from that case the question of vigilance enjoined by the law upon a railroad company with a view to discover persons exposed to danger at a highway crossing. No *559 where in the eases cited do we find that the court has held it to be an inexorable rule and as a matter' of absolute duty that a motorman shall be held to accountability under any and all circumstances for failing to discover that which in the exercise of ordinary care he did not and could not discover, or as stated in said request ‘ ‘ or ought to have become aware of. ’ ’ True' this language was used in the Kassen case referred to, but Judge Shauek in announcing the opinion in the McCormick case in reviewing the Kassen case on page 54, says:
“The phrase ‘ought to have been aware’ manifestly applies to those in charge of the following train, and implies the duty of the company to communicate to them its actual knowledge of Kassen’s danger. * * * It is entirely clear, therefore, that the liability of the company was placed upon the sole ground that after receiving actual notice that Kassen was upon the track and in a position of peril, it failed to use the means at hand to avoid injury to him. The doctrine of the ease can have no application when neither the company nor its employes operating the train by which the injury is inflicted may be charged with actual knowledge. The rule of liability applies only when there is actual knowledge of those operating the train inflicting the injury, which knowledge is imputed to the company derived through other means, with opportunity to communicate it to those operating the train. By introducing into the instruction given the phrase, ‘if the engineer in charge of the train ought, by the exercise of ordinary care, to have seen the deceased in his perilous position,’ and by other expressions in the charge involving the same conception, the court gave to the jury an erroneous view of the law. ’ ’
It appears that the foregoing opinion was concurred in by Judge Spear who announced the opinion in the case of Steubenville & W. Trac. Co. v. Brandon, and by Judge Davis who announced the opinion in the case of Drown v. Northern Ohio Trac. Co. referred to.
In the opinions announced in both the Drown v. Northern Ohio Trac. Co. and West v. Gillette, cases, the following text from 2 Thompson, Negligence, Sec. 162.9, was cited with approval :
“Although a person comes upon the track negligently, yet if. the servants of the railway company, after they see his danger. *560 can avoid injuring him, they are bound to do so. And, according to the better view with reference to injuries to travelers at highway crossings, — as distinguished from injuries to trespassers and bare licensees upon railway tracks at places where they have no legal right to be, — the servants of the railway company are bound to keep a vigilant lookout in front of advancing engines or trains, to the end of discovering persons exposed to danger on highway crossings; and the railway company will be liable for running over them if, by maintaining such a lookout and by using reasonable care and exertion to cheek or stop its train, it could avoid injury to them. ’ ’
As here stated, “the servants of the railway company are bound to keep a vigilant lookout,” but where such vigilance has been exercised by the motorman consistent with his paramount duty owing to passengers in his charge as held in the New York, C. & St. L. Ry. v. Kistler, 66 Ohio St. 326-337 [64 N. E. 130], has not the duty imposed by the law upon him been discharged! Opportunity to know may not be knowledge. Without pursuing this subject further we think that the epitome of the law on this subject is correctly and concretely stated in Thompson, Negligence, referred to, which was approved by Judge Johnson in the case of West v. Gillette, supra, as being “well founded in reason and authority.”
As each case rests upon its own facts, let us inquire what the facts were on this branch of the case as shown by the record in the case at bar. As stated, “Oak Stop” was a signal stop in the open country where the defendant company’s cars stopped on signal. While the failure of the motorman to give a signal or to reduce the speed of the ear at said signal stop are alleged in the plaintiff’s said amended petition as contributing causes to said decedent’s death, the failure of the motorman to discover the presence of the decedent at or about said stop was specially urged in argument as the proximate cause of said death. Passing the circumstances under which the decedent undertook to cross the tracks from the Fullerton home, to which we have already referred, it appears that in running from Buckeye Lake to Oak stop the car was running at the rapid rate mentioned and commencing on page 320 of the record it appears that C. T. Hayden, the motorman in charge of said car, testified in direct examination, in substance, that the car left Buckeye Lake on regu *561 lar schedule time and was running' on time when passing Oak stop; there was a misty rain on and the railroad tracks were slippery and not the best'; that it commenced to rain before the car left Buckeye Lake; that the accident occurred in the early part of the evening of the day mentioned; that he first saw Mrs. Taylor when the car was 150 to 250 feet from the crossing, coming through the little gate by the crossing, when he blew the whistle, shut off the power and reversed the car; that he did not see Mrs. Taylor struck; that he is not now employed by the Ohio Electric Co. On cross examination he continued: that the accident happened just at dusk, it wasn’t dark; that he was standing in the center of the vestibule of the car, or sitting in the center, rather, on a stool; that there was no one in the vestibule with him; "W. H. Smith was our conductor; that he did not talk with said Smith or anyone from the time the car crossed the trestle to where Mrs. Taylor was struck; that he didn’t see anyone at Oak stop who wanted to get on, nor did he see anyone waving or giving any signal; that he was in his proper place when the car approached Oak stop and he kept a proper lookout; that when he saw Mrs. Taylor she was running tbward the car when he shut off the power and reversed the motor; that the only obstruction to his view of the track at any time after crossing the trestle before passing Oak stop was a misty rain on the windows, which were not open, nor could any of the windows in the vestibule be opened; that he did not see a handkerchief in Mrs. Taylor’s hand.
During the trial one Leonard Hoskinson, a witness for the plaintiff, testified that he was sitting in a certain seat in the car where he could see and did see the motorman and conductor talking together in the front vestibule of the car at some little distance from the scene, and immediately before the time of the accident, and that the motorman looked behind him at times during such talk, as tending to show that he was not engaged in keeping a vigilant lookout in front of the car, but other witnesses in addition to the motorman and conductor testified that the said Hoskinson did not occupy the seat in said car as claimed by him and that the motorman and conductor were not so engaged in conversation at said time, whose testimony appears to *562 have been believed and accepted by the jury as the true and correct statement of this disputed fact.
Request No. 2 reads as follows:
‘ ‘ The court charges you that if the motorman saw Mrs. Taylor upon the company’s right of way or could, by the exercise of ordinary care, have seen Mrs. Taylor in said position in time to have slackened his speed or stopped his car and avoid the injury, then your verdict should be for the plaintiff. ’ ’
This request is open to the objection that it extends the range of vision of the motorman to the company’s right of way. It was said in argument, and not disputed, that said company’s right of way at this point was over forty feet. The presence of one on such right of way, if seen, would rather repel than raise the presumption that such person would go upon the company’s tracks in the face of a rapidly approaching car at high speed. As was said by Judge Burket in announcing the opinion of New York, C. & St. L. Ry. v. Kistler, supra:
“It is the duty of an engineer on a train to keep a lookout on the track ahead of him, and he is not expected to see anything on the sides of the right of way farther than his eye may take in objects within the range of vision while looking ahead along the track,” citing Cleveland, C. & C. Ry. v. Elliott, 4 Ohio St. 474, 476 and other authorities.”
The principle here announced, applicable to an engineer on a locomotive, is alike applicable to a motorman operating an interurban car. The request as a proposition entire was too broad in its statement and was therefore properly refused.
Request No. 3 was properly refused for the same reason as was request No. 2.
Requests Nos. 4 and 5 were given as requested.
Request No. 6 was properly refused for the same reason as request No. 1.
■ It was also urged that the court below erred in its general charge to the jury and our attention, was specially called to what are claimed to be inconsistent instructions on-the subject of contributory negligence and to the speed of interurban cars in the open country. After giving request No. 5 on behalf of the plaintiff in error as appears on page 362 of the record, it was con *563 tended that the court afterward gave another and a contrary instruction on behalf of the defendant in error as the same appears on page 364, and which is as follows:
“If you find that the decedent, Martha Taylor, was negligent, and that the defendant was negligent and that the negligence of both was contemporaneous and continuing until after the injury and that the negligence of each was a direct cause of the injury without which it would not have occurred, the plaintiff may not recover and your verdict should be for the defendant. ’ ’
The charge proceeded upon the theory that the petition and evidence presented a ease involving the issue of the “last chance. ’ ’ The reasoning adopted by Judge Davis in announcing the opinion in the ease of Drown v. Northern Ohio Trac. Co. supra, that “If the plaintiff and the defendant both be negligent and the negligence of both be concurrent and directly contributing to produce the accident, then the case is one of contributory negligence pure and simple. But if the plaintiff’s negligence merely put him in the place of danger and stopped there, not actively continuing until the moment of the accident, and the defendant either knew of his danger, or by the exercise of such diligence as the law imposes on him would have known it, then, if the plaintiff’s negligence did not concurrently combine with defendant’s negligence to produce the injury, the defendant’s negligence is the proximate cause of the injury and that of the plaintiff is a remote cause,” seems to have been followed in framing said request so far as it applied to the question of contributory negligence. So far as it goes, we see nothing wrong in this instruction, but it is objected to because it does not include the qualification of the “last chance” rule, which nullifies the defense of contributory negligence, in a proper case. True this might have been given under the issue raised by the pleadings in the case, as claimed by the plaintiff in error, but it was a request submitted by the defendant in error, and yet the court in its general charge instructed the jury in accordance with the instruction given in said request No. 5 submitted by the plaintiff in error. To constitute ground of reversal where inconsistent charges have been given they must be to a material matter and prejudicial. Here it cannot be said *564 that the subject matter of the instruction was not material, but was it misleading and prejudicial in view of the instruction, given in said request No. 5 and the same instruction in substance repeated in the general charge ? We do not think it was, but even assuming that it was, we think that the verdict and judgment below was right and that said judgment ought not to be disturbed on this account. Way & Co. v. Langley, 15 Ohio St. 392; Banning v. Banning, 12 Ohio St. 437.
It was objected also that the following instruction as the same appears on page 365 in the record, given on behalf of the defendant in error, was inconsistent with -request No. 4, given on behalf of the plaintiff in error on page 364:
“It is not negligence for the defendant to run its car on its own right of way in the open country at a high rate of speed.”
It is contended that this instruction is contrary to a holding made by the Supreme Court in the Kistler Case referred to. The instruction contained in said request appears to be general and as such it appears to be in harmony with the proposition laid down in the syllabus of said case. A different rule would apply in a case where the motorman of a car discovered, or in the exercise of ordinary care in keeping a proper lookout could discover, a person at a public crossing or at a customary stopping place. We fail to find any ground of reversible error in this respect.
It was also argued that the verdict of the jury, was against the manifest weight of the evidence. Because of the loss of a life, we have been led to carefully read and examine this record, not in the hope of finding error against the defendant in error that would authorize us as a court to set aside the verdict, but to ascertain whether or not the decedent’s legal representative had a fair trial under the forms of law provided in such cases. Accidents by violent death usually evoke sympathy, and such undoubtedly was the natural feeling shared by the jury under a recital of this tragic occurrence, but sympathy has no place in the administration of the law, and under the evidence pre•sented in this case, under the instructions of the court, we are' of the unanimous opinion that the verdict of the jury was a proper and just one. As we read this record, the decedent, with *565 a full and unobstructed view of an approaching car running at a high rate of speed, attempted to hastily cross the tracks of the defendant in error at an unsafe and dangerous distance from said ear, and not being discovered by the motorman in time to check its speed to protect her from injury, she was struck and killed by said car. Unsympathetic and uncharitable though it may seem, the law affords no reparation in such cases. Judgment affirmed.
Powell and Houck, .JJ., concur.